UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| VICTORIA SHAEV, | : |
| | : |
| Plaintiff, | : Case No. 1:23-cv-8460 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| PFSWEB, INC., DAVID I. BEATSON, | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| ROBERT FRANKFURT, G. MERCEDES DE | : **THE SECURITIES EXCHANGE ACT** |
| LUCA, MONICA LUECHTEFELD, | : **OF 1934** |
| BENJAMIN ROSENZWEIG, MICHAEL C. | : |
| WILLOUGHBY, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

---

Victoria Shaev ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against PSFweb, Inc. ("PSFweb or the "Company") and the members PSFweb board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of PSFweb by affiliates of GXO Logistics, Inc. ("GXO").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on September 21, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed

transaction whereby Peregrine MergerSub I, Inc. ("Merger Sub"), a wholly-owned subsidiary of GXO, will commence a tender offer to purchase all of the outstanding shares of Company common stock (the "Tender Offer") and following the Tender Offer, Merger Sub will be merged with and into the Company, with the Company continuing as the surviving corporation and as a wholly owned subsidiary of GXO (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated September 13, 2023 (the "Merger Agreement"), each PSFweb common share issued and outstanding will be converted into the right to receive $7.50 per share owned (the "Merger Consideration"). In accordance with the Merger Agreement, Purchaser commenced a tender offer to acquire all of PSFweb's outstanding common stock and will expire on October 20, 2023 (the "Tender Offer").

3. Defendants have now asked PSFweb's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) PSFweb's financial projections relied upon by the Company's financial advisor, Raymond James & Associates, Inc. ("Raymond James"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Raymond James. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as PSFweb stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to PSFweb's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDIPSFWEBON AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company stock trades on the NASDAQ Stock Exchange, headquartered in this district.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of PSFweb common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant David I. Beatson has served as a member of the Board since November 2000.

11. Individual Defendant Robert Frankfurt has served as a member of the Board since March 2019.

12. Individual Defendant G. Mercedes De Luca has served as a member of the Board since May 2019.

13. Individual Defendant Monica Luechtefeld has served as a member of the Board since April 2014.

14. Individual Defendant Benjamin Rosenzweig has served as a member of the Board since May 2013.

15. Individual Defendant Michael C. Willoughby has served as a member of the Board since March 2013 and is the Company's Chief Executive Officer.

16. Defendant PSFweb is a company organized under the laws of Delaware and maintains its principal offices at 9250 N. Royal Lane, Suite 100, Irving, Texas 75063. The Company's common stock trades on the NASDAQ Capital Market under the symbol "PFSW."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.**  **The Proposed Transaction**

19. PSFweb, together with its subsidiaries, provides omni-channel commerce solutions in the United States, Belgium, the United Kingdom, Canada, and India. The Company offers order to cash service, which provides distributed order orchestration and payment processing; order fulfillment services; contact center services that are focused on providing essential services, such as order entry, returns authorization, product inquiry, and order tracking, as well as iCommerce

Agent, an application where agents provides customer service functions, such as placing orders, checking order status, facilitating returns, initiating upsell and cross sell, managing escalations, and gathering voice of the customer information. It serves clients in various industries, such as health, skincare, fragrance and beauty products, cosmetics, fashion apparel and accessories, footwear, luxury goods, consumer packaged goods, coins and collectibles, jewelry, housewares, computer and office products, and other industries. The Company was incorporated in 1999 and is headquartered in Irving, Texas.

20. On September 14, 2023, the Company and GXO jointly announced the Proposed Transaction:

> GREENWICH, Conn., Sept. 14, 2023 (GLOBE NEWSWIRE) -- GXO Logistics, Inc. (NYSE: GXO), the world's largest pure-play contract logistics provider, and PFSweb, Inc. (Nasdaq: PFSW), a premier, tech-enabled eCommerce order fulfillment platform based in the United States, today announced they have entered into a definitive agreement pursuant to which GXO will acquire PFSweb for $7.50 per share in cash, representing an equity value of approximately $181 million. The enterprise value is $142 million and includes PFSweb's cash balance of $39 million at June 30, 2023.
>
> Texas-based PFSweb is a leading e-commerce order fulfillment provider, serving some of the most iconic luxury brands in the world through 11 distribution centers across North America, Belgium, and the U.K. PFSweb has significant expertise delivering seamless, high touch fulfillment in key growth verticals, including health & beauty, jewelry and collectibles, activewear, and prestige CPG categories, where it has established lasting relationships through an array of solutions and services that deliver an unforgettable unboxing experience.
>
> GXO CEO Malcolm Wilson said, "PFS is an ideal acquisition for GXO: it enhances our exposure to new high-growth verticals in North America and adds important capabilities to our offerings. Over the past 25 years, the PFS team has established a successful track record in both direct to consumer and B2B channels, and they've built a rock-solid reputation with many of the world's most iconic brands by deploying an order fulfillment platform that rivals

5

the largest enterprise 3PL providers in the industry. We're excited to bring them on board and look forward to driving additional shareholder value through disciplined capital allocation and continued investment in high growth opportunities."

**Strategic Benefits:**

- GXO to immediately add to its customer portfolio in short cycle, high volume product categories.

- GXO to further expand its U.S. offering in cosmetics and luxury leveraging PFSweb's client relationships that service more than 100 brands, including L'Oréal USA, Champion, Pandora, Shiseido Americas, Kendra Scott, and the United States Mint.

- GXO to capitalize on PFSweb's technology and services with expanded offerings to GXO's current North America and European customers.

- In addition to an end-to-end 3PL fulfillment offering, PFSweb provides three value added services that will expand GXO's suite of capabilities: payments and fraud protection, customer care and distributed order orchestration systems.

PFSweb CEO Mike Willoughby said, "GXO's industry leadership, global scale and significant capital resources make their platform a strong strategic partner for PFS. In joining GXO, we can deliver our proven, branded order fulfillment and support services to an expanded base of premier clients, as well as further enhance GXO's global fulfillment network. The GXO team shares our commitment to top-quality client relationships and execution, and we look forward to our future together."

**Terms of the Transaction**

The merger agreement provides for GXO, through a subsidiary, to commence a tender offer to acquire all outstanding shares of PFSweb at an all-cash price of $7.50 per share of PFSweb common stock. The closing of the tender offer will be subject to certain conditions, including the tender of at least a majority of the outstanding shares of PFSweb common stock, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary closing conditions. Upon the successful completion of the tender offer, GXO will acquire all

shares not acquired in the tender through a second-step merger. The transaction is expected to close in the fourth quarter of 2023.

**Advisors**
GXO's financial advisor for the transaction is Goldman Sachs, and its legal advisor is Wachtell, Lipton, Rosen & Katz. PFSweb's financial advisor for the transaction is Raymond James & Associates, Inc., and its legal advisor is FisherBroyles, LLP.

* * *

21. It is therefore imperative that PSFweb's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.** **The Materially Incomplete and Misleading Solicitation Statement**

22. On September 21, 2023, PSFweb filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

23. The Solicitation Statement fails to provide material information concerning financial projections by PSFweb management and relied upon by Raymond James in its analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the

7

rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Raymond James with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that PSFweb management provided to the Board and Raymond James. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. The Solicitation Statement fails to disclose the Company's unleveraged free cash flows and the Company's net operating losses, metrics used by Raymond James for its *Discounted Cash Flow Analysis*, and all line items used to calculate the metrics.

25. For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Service Fee Equivalent Revenue, Reported EBITDA, Reported Adjusted EBITDA but fails to provide line items used to calculate the metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or

8

released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a the unleveraged free cash flow and net operating losses and the underlying line items, the line items used to calculate the projected non-GAAP metrics, and reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Raymond James's Financial Analyses*

29. With respect to Raymond James' *Selected Companies Analysis*, the Solicitation Statement fails to disclose the financial metrics and multiples for each company selected by Raymond James for the analysis.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

30. With respect to Raymond James' *Selected Transaction Analysis*, the Solicitation Statement fails to disclose the financial metrics and multiples for each transaction selected by Raymond James for the analysis.

31. With respect to Raymond James' *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the projected unleveraged free cash flows and net operating losses of PSFweb and all accompanying line items; (ii) the inputs and assumptions underlying the discount rates ranging from 10.7% to 14.7%; (iii) the terminal values of the Company; (iv) the inputs and assumptions underlying the multiples ranging from 8.0x to 11.0x; and (v) the inputs and assumptions underlying the perpetuity growth rates, ranging from 2% to 4%.

32. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

35. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

36. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

37. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

38. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

39. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

40. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
**(Against All Defendants)**

41. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

42. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

43. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

44. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

45. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had

access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

46. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of PSFweb within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of PSFweb, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of PSFweb, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of PSFweb, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

51. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: September 26, 2023　　　　　　　　**MELWANI & CHAN LLP**

　　　　　　　　　　　　　　　　　　　　/s *Gloria Kui Melwani*
　　　　　　　　　　　　　　　　　　　　Gloria Kui Melwani (GM5661)
　　　　　　　　　　　　　　　　　　　　1180 Avenue of the Americas, 8th Floor
　　　　　　　　　　　　　　　　　　　　New York, New York 10036
　　　　　　　　　　　　　　　　　　　　Tel: (212) 382-4620
　　　　　　　　　　　　　　　　　　　　Email: gloria@melwanichan.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*